**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JENNIFER S.,**

     **Plaintiff,**

**v.**                            **Case No.: 2:25-cv-00551**

**FRANK BISIGNANO,
Commissioner of the
Social Security Administration,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks review of the decision of the Commissioner of Social Security ("Commissioner") denying Claimant's application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Presently pending before the Court are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 10, 11, 12). The undersigned has fully considered the administrative record and the arguments of counsel. For the reasons set forth below, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**, and this action **DISMISSED.**

## I.     **Procedural History**

On July 11, 2022, Jennifer S. ("Claimant") protectively filed an application for DIB, alleging disability beginning on March 2, 2022. (Tr. 625). In her disability report filed on August 8, 2022, Claimant listed that the following medical conditions limited her ability to work: "1. type 1 diabetes with type 2 sensitivity, 2. hypertension and tachycardia, 3. neuropathy in arms and hands, 4. Asthma, 5. Anxiety, 6. RLS, 7. lower back pain, 8. bilateral leg weakness, 9. bladder control issues, and 10. gastritis." (Tr. at 659). After the claim was denied initially and on reconsideration, Claimant, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ") in July 2024. (Tr. at 498-521). By decision dated September 11, 2024, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act. (Tr. 348-73). The Appeals Council denied Claimant's request for review. (Tr. at 1-7). Accordingly, the ALJ's decision became the final decision of the Commissioner.

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 9). Claimant thereafter filed a Brief seeking judgment on the pleadings, (ECF No. 10), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 11), to which Claimant filed a reply, (ECF No. 12). Consequently, the matter is fully briefed and ready for resolution.

## II.     **Claimant's Background**

Claimant was 48 years old on her alleged onset date, but she subsequently changed age category to an individual "closely approaching advanced age" during the relevant period. (Tr. 365). Claimant has a college degree and previously worked as a registered nurse. (Tr. 660).

2

## III.   **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case

of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is

4

deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ found as a preliminary matter that Claimant met the insured status requirements for DIB through December 31, 2026. (Tr. 353, Finding No. 1). At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date. (*Id.*, Finding No. 2). At step two, the ALJ found that Claimant had the following severe impairments: obesity, type I diabetes mellitus, peripheral neuropathy, hypertension, asthma, restless leg syndrome, lumbar disc disease, irritable bowel syndrome, and carpal tunnel syndrome status post two release procedures. (Tr. 354, Finding No. 3). The ALJ also found that Claimant had several non-severe impairments, including depression and anxiety. (Tr. at 354-57).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 357, Finding No. 4). Before proceeding to step four, the ALJ assessed Claimant's RFC and

5

found that Claimant could perform a range of sedentary work. (Tr. 359-65, Finding No. 5). As relevant to Claimant's challenge, the ALJ did not assess any mental RFC restrictions. (*Id.*). At step four, the ALJ determined that Claimant could not perform her past relevant work. (Tr. 365, Finding No. 6). The ALJ thus considered Claimant's age, education, and work experience. (Tr. at 365, Finding Nos. 7 through 9). Taking into account those factors and Claimant's RFC, the ALJ found that Claimant acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. at 366, Finding No. 10). Accordingly, the ALJ concluded that Claimant was not disabled. (*Id.*, Finding No. 11).

## IV.    **<u>Claimant's Challenge to the Commissioner's Decision</u>**

Claimant argues that the ALJ failed to include mental limitations in the RFC or explain why such limitations were excluded despite concluding at step two that Claimant had mild mental limitations. (ECF No. 10). Claimant contends that the omission is material because the ALJ relied on skilled jobs at step five, and the absence of any explanation regarding the effect of Claimant's mild mental limitations precludes meaningful judicial review. *(Id.)*.

In response, the Commissioner avers that the ALJ was not required to include mental restrictions in the RFC solely based on mild paragraph B findings. (ECF No. 11). According to the Commissioner, the ALJ sufficiently considered Claimant's mental impairments by discussing Claimant's functional reports, consultative examination findings, limited mental health treatment, Dr. Cohen's testimony, and the prior administrative findings. *(Id.)*. The Commissioner further argues the ALJ reasonably determined that Claimant's non-severe mental impairments did not create work-related functional limitations. *(Id.)*.

6

In reply, Claimant maintains that she does not assert a categorical rule requiring RFC restrictions whenever an ALJ finds mild paragraph B limitations. (ECF No. 12). Rather, Claimant argues that the ALJ provided no explanation after step two for omitting mental limitations from the RFC, and Defendant's cited authorities are distinguishable because those cases involved ALJs who discussed the claimants' mental impairments during the RFC analysis. (*Id.*).

## V.   <u>Relevant Evidence</u>

The undersigned thoroughly examined the entire administrative record. The evidence that is most pertinent to Claimant's challenge is summarized below in chronological order.

### A. *Consultative Examination*

In January 2023, Claimant underwent a consultative mental status evaluation with Tara Bias, M.A. (Tr. at 838–42). Claimant reported recurrent depressive episodes, persistently depressed mood, loss of interest in activities, unsatisfying sleep, crying episodes, helplessness, pessimism, excessive anxiety and worry, irritability, muscle tension, and feeling on edge. (Tr. at 839). Claimant further reported that chronic pain disrupted her social and occupational functioning and contributed to sadness, worry, anxiety, and frustration regarding her inability to work and perform activities at her prior level. (*Id.*). Claimant stated that her primary care provider prescribed psychotropic medication, including Zoloft, but she did not receive any other mental health treatment. (Tr. at 839–40).

During the evaluation, Claimant appeared neatly dressed with appropriate hygiene. (Tr. at 840). She was cooperative during the evaluation, maintained good eye contact, and demonstrated coherent and connected speech. (*Id.*). Claimant was oriented

to person, time, place, and circumstance. (*Id*.). The evaluator observed dysphoric mood with affect congruent to mood. (*Id*.). Thought processes were understandable and connected, and the evaluator found no evidence of delusions, paranoia, obsessive thoughts, compulsive behaviors, or unusual perceptual experiences. (*Id*.). Judgment was within normal limits, insight was good, and psychomotor behavior was within normal limits. (Tr. at 840–41). Claimant denied suicidal and homicidal ideation. (Tr. at 841). Immediate memory, recent memory, and remote memory were normal or within normal limits. (*Id*.). Concentration was normal based on digit-span testing, and persistence and pace were within normal limits during the evaluation. (*Id*.). The evaluator observed mild impairment in social functioning based upon Claimant's displayed dysphoric mood and the fact that she appeared near tears during the evaluation. (*Id*.). The evaluator diagnosed Major Depressive Disorder, Recurrent, Moderate; Generalized Anxiety Disorder; and Somatic Symptom Disorder with Predominant Pain, Moderate. (*Id*.).

### B. Prior Administrative Findings

At the initial administrative level, psychological consultant Joseph Richard, Ed.D., assessed that Claimant suffered from mild limitation in understanding, remembering, or applying information and interacting with others, with no limitation in concentrating, persisting, or maintaining pace or adapting or managing oneself. (Tr. at 526). At the reconsideration level, Jeff Harlow, Ph.D., affirmed that Claimant's mental impairments were non-severe and resulted in no more than mild mental limitations. (Tr. at 536).

### C. Administrative Hearing

A board-certified psychiatrist, Richard W. Cohen, M.D., testified during Claimant's administrative hearing in July 2024 that Claimant suffers from mild mental impairments that do not result in any work-related limitations. (Tr. at 505-06). At the conclusion of

the hearing, the ALJ noted two potential medical exhibits were outstanding and proposed putting the case "in post for 30 days." (Tr. at 520). The ALJ then directed that the case be placed "in post . . . for 22E, possible medical evidence for the record for 30 days." (Tr. at 520–21).

### D. Treatment Records

In January 2024, Claimant presented for a psychotherapy intake and psychiatric evaluation. (Tr. at 1000–04). She stated that her mood had been "okay," but she had not seen a "whole lot of change." (Tr. at 1000). She believed that she had seasonal depression. (*Id.*). Her mood and affect were depressed, and she had passive suicidal thoughts without any desire to act on them, but other mental status findings were normal. (Tr. at 1000-01). Claimant appeared well groomed, alert, and oriented; was cooperative; and demonstrated good eye contact, normal rate and volume of speech, linear and goal directed thought processes, appropriate thought content, above average knowledge, reasonable judgment, age-appropriate insight, intact attention, normal memory, and calm motor functioning. (*Id.*). Her dosage of Zoloft was increased, she was scheduled for therapy, and she was agreeable to trying Bright Light Therapy for the seasonal component of her depression. (Tr. at 1001).

## VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  **Discussion**

Claimant presents a narrow issue regarding her mental impairments. She does not challenge the ALJ's finding that her depression and anxiety were non-severe, nor does she argue the ALJ should have found greater than mild paragraph B limitations. Rather, Claimant argues the decision is flawed because the ALJ failed to assess mental RFC or explain why her mild mental functional limitations did not require any mental RFC restrictions.

The undersigned agrees with Claimant that the RFC narrative itself does not discuss Claimant's mental impairments. The question presented, however, is not whether the ALJ repeated the step two mental impairment discussion in the RFC section. The inquiry is whether the ALJ's decision, read as a whole, permits meaningful review of the ALJ's determination that Claimant's non-severe mental impairments did not cause work-

10

related mental limitations. *Britt v. Saul*, 860 F. App'x 256, 262–63 (4th Cir. 2021); *Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020).

The regulation provides that paragraph B findings are not an RFC assessment, and that the RFC assessment requires a more detailed assessment of the claimant's functional limitations. 20 C.F.R. § 404.1520a(d)(3); SSR 96-8p, 1996 WL 374184, at *4. That principle does not mean that every mild paragraph B limitation automatically requires a corresponding RFC restriction. However, even when the ALJ assesses mild mental limitations, the ALJ must consider the non-severe impairment and explain the RFC determination sufficiently to permit meaningful review. *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D.W. Va. Mar. 28, 2016); *Mosley v. Berryhill*, No. 2:17-cv-04197, 2018 WL 4781297, at *9 (S.D.W. Va. Sept. 5, 2018), *report and recommendation adopted*, 2018 WL 4781183 (S.D.W. Va. Oct. 3, 2018).

Here, the ALJ did more than recite the paragraph B ratings at step two. The ALJ thoroughly discussed the mental health evidence in the record. For instance, the ALJ summarized the January 2023 consultative examination, including Claimant's reports of depression, anxiety, loss of interest, sleep difficulties, helplessness, pessimism, crying spells, excessive worry, and irritability. (Tr. at 354). The ALJ also identified the consultative findings that Claimant had dysphoric mood and congruent affect, but normal memory, normal concentration, mildly impaired social functioning, and persistence and pace within normal limits. (*Id.*). The ALJ then discussed the later mental health evaluation, including Claimant's reports of anxiety, depression, excessive worry, sadness, difficulty concentrating, poor memory, and obsessive-compulsive behaviors, but also the findings that Claimant was friendly and cooperative and that memory and concentration were within normal limits. (*Id.*). The ALJ further discussed Dr. Cohen's testimony,

11

including Dr. Cohen's opinion that Claimant had only mild limitations in each paragraph B functional area. (Tr. at 354-55).

The ALJ then made an express finding that Claimant's depression and anxiety, considered singly and in combination, "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.*). The ALJ proceeded to discuss each paragraph B area in detail. (Tr. at 355–56). In doing so, the ALJ relied on Claimant's testimony, function reports, consultative findings, activities, and opinion evidence. (*Id.*). The ALJ acknowledged some reported difficulties, including difficulty getting along with others when glucose levels fluctuated, varying attention depending on physical condition, sleep difficulties, and difficulty with buttons and zippers due to physical symptoms. (*Id.*). The ALJ nevertheless found only mild limitations in each area based on the record as a whole. (*Id.*). The ALJ also evaluated the prior administrative findings of the psychological consultants, finding them persuasive because they were consistent with the consultative examination findings, Claimant's activities, and the longitudinal treatment evidence. (Tr. at 357).

The ALJ also expressly stated that the RFC assessment reflected the degree of limitation found in the paragraph B analysis. (Tr. at 356). While this is sometimes considered a boilerplate explanation, it is clearly sufficient under the circumstances presented here. The ALJ's paragraph B discussion was not merely a severity finding divorced from the RFC determination. Rather, the ALJ analyzed the very question relevant to Claimant's RFC, which was whether Claimant's depression and anxiety caused functional limitations affecting basic mental work activities. In doing so, the ALJ discussed Claimant's subjective complaints, treatment history, activities, consultative findings, prior administrative findings, and Dr. Cohen's testimony before concluding

Claimant's impairments caused no more than minimal limitation in basic mental work activities. (Tr. at 354–56). Although the RFC section itself would have been clearer had the ALJ repeated that reasoning there, remand is not required where the path of the ALJ's reasoning can nevertheless be reasonably discerned from the decision as a whole. *See Britt*, 860 F. App'x at 262–63.

Claimant principally relies upon a line of unpublished district court cases which remanded the Commissioner's decisions because the ALJs identified mild paragraph B limitations but failed to provide sufficient analysis explaining why those limitations did not result in corresponding RFC restrictions. Those cases are distinguishable.

In *Shank v. Saul*, the court remanded because the ALJ found mild limitation in the area of adapting and managing oneself, stated that the RFC reflected the paragraph B findings, but never explained why that limitation resulted in no corresponding mental RFC restriction. *Shank v. Saul,* No. 3:20-cv-00444, 2021 WL 2767063, at *8–9 (S.D.W. Va. June 11, 2021), *report and recommendation adopted*, 2021 WL 2744550 (S.D.W. Va. July 1, 2021). The court emphasized that the ALJ identified the mild limitation yet failed to provide substantive analysis connecting that finding to the omission of mental restrictions from the RFC. *Id.* at *9. Here, by contrast, the ALJ did not merely identify mild paragraph B limitations and rely upon boilerplate language. The ALJ discussed the evidence underlying the mild findings, including Claimant's subjective complaints, consultative findings, treatment history, prior administrative findings, and Dr. Cohen's testimony, before concluding Claimant's impairments caused no more than minimal limitation in basic mental work activities. (Tr. at 354–56).

In *Jones v. Kijakazi*, the court remanded because the ALJ found mild limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace,

13

yet the RFC discussion focused exclusively on physical impairments and did not explain how the mild mental limitations factored into the RFC assessment. *Jones v. Kijakazi*, No. 5:21-cv-00634, ECF No. 18 at 18–23 (S.D.W. Va. Sept. 22, 2022), *report and recommendation adopted*, 2022 WL 17251407 (S.D.W. Va. Nov. 28, 2022). The court specifically noted that the ALJ relied on opinion evidence recognizing mild work-related mental difficulties but "did not provide any explanation at all" regarding why the RFC contained no mental restrictions. *Id.* at 19–21. Here, unlike *Jones*, the ALJ's discussion did not stop with the paragraph B ratings or silently pivot to purely physical limitations. The ALJ addressed the specific evidence bearing on Claimant's functional mental abilities, including findings reflecting normal concentration, persistence, pace, memory, judgment, and thought processes. (Tr. at 354, 840–41).

In *Karen W. v. Kijakazi*, the court remanded because the ALJ acknowledged that the paragraph B findings were not an RFC assessment and that a more detailed evaluation would be required at later steps, yet "never followed through on this." *Karen W. v. Kijakazi*, No. 2:23-cv-00044, 2023 WL 6289991, at *8 (S.D.W. Va. July 31, 2023), *report and recommendation adopted*, 2023 WL 6282856 (S.D.W. Va. Sept. 26, 2023). The defect in *Karen W.* was not simply the absence of mental RFC restrictions, but the absence of any later functional analysis explaining why those restrictions were unnecessary. Here, by contrast, the ALJ's paragraph B discussion itself contains the detailed functional analysis the court found missing in *Karen W.* The ALJ discussed Claimant's symptoms, treatment history, activities, opinion evidence, and functional findings before concluding that Claimant's impairments caused no more than minimal limitation in basic mental work activities. (Tr. at 354–56).

14

In *Mary S. v. Kijakazi*, the court concluded that the ALJ failed to build a logical bridge between the mild paragraph B findings and the omission of mental restrictions from the RFC. *Mary S. v. Kijakazi*, No. 2:23-cv-00302, 2023 WL 9007315, at *7 (S.D.W. Va. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 9004929 (S.D.W. Va. Dec. 28, 2023). The court emphasized that there was no explicit finding that the claimant's mild limitations resulted in no work-related restrictions. *Id*. Here, unlike *Mary S.*, the ALJ expressly found that Claimant's depression and anxiety "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. at 355). Thus, the ALJ did not merely identify mild limitations; the ALJ expressly found that those limitations did not translate into work-related mental restrictions.

In *Brenda H. v. O'Malley*, the court remanded because the ALJ failed to address the claimant's mental impairments after step two and instead relied upon boilerplate language that the RFC reflected the paragraph B findings. *Brenda H. v. O'Malley*, No. 2:23-cv-00631, 2024 WL 561185, at *8–9 (S.D.W. Va. Jan. 26, 2024). Importantly, the court distinguished cases in which ALJs either expressly found that the claimant had no work-related mental limitations or otherwise continued the mental-function analysis beyond step two. *Id*. Here, the ALJ did exactly what the court found missing in *Brenda H*. The ALJ continued the analysis beyond merely assigning paragraph B ratings by discussing the consultative examination, later mental health evidence, prior administrative findings, Claimant's activities, and Dr. Cohen's testimony before concluding the impairments caused no more than minimal limitation in basic mental work activities. (Tr. at 354–56). The fact that the ALJ performed this analysis during the

15

paragraph B discussion, rather than repeating it later in the RFC section, does not require remand where the ALJ's reasoning is otherwise discernible from the decision as a whole.

In *Harold S. v. O'Malley*, the court remanded because, although the ALJ adequately explained the claimant's mild paragraph B findings, the ALJ "never followed through" with the more detailed RFC analysis contemplated by SSR 96-8p. *Harold S. v. O'Malley*, No. 5:24-cv-00004, 2024 WL 2837611, at *7 (S.D.W. Va. May 7, 2024). The court stressed that the ALJ's discussion of the claimant's mental impairments "did not proceed beyond step two." *Id.* Here, the ALJ's step two discussion functionally performed the more detailed analysis that the remanding court found absent in *Harold S*. The ALJ analyzed the evidence bearing on Claimant's ability to perform basic mental work activities and expressly tied the RFC assessment to that analysis. (Tr. at 354–57).

Claimant further argues that the absence of a mental RFC analysis is particularly significant because the ALJ found Claimant capable of skilled work. In support, Claimant relies on *Carr-Cooper v. Kijakazi*, which the court remanded because the ALJ found mild mental limitations, relied on skilled past relevant work at step four, and failed to provide substantive analysis explaining why no mental RFC restrictions were warranted. *Carr-Cooper v. Kijakazi*, No. 1:22-cv-00009, 2023 WL 3999224, at *5–6 (N.D.W. Va. June 14, 2023). The court emphasized that boilerplate language stating that the RFC reflected the paragraph B findings did not provide meaningful analysis, particularly given the mental demands associated with the claimant's skilled work. *Id.* Here, unlike *Carr-Cooper*, the ALJ did not merely rely upon boilerplate language. Rather, the ALJ discussed the evidence relevant to Claimant's functional mental abilities, including the consultative findings reflecting normal concentration, persistence, pace, memory, judgment, and thought processes, Claimant's treatment history, the prior administrative findings,

16

Claimant's reported functioning, and Dr. Cohen's testimony before concluding Claimant's impairments caused no more than minimal limitation in basic mental work activities. (Tr. at 354–56, 840–41). Thus, although the ALJ ultimately found Claimant capable of skilled work, the Court is not left to speculate why no mental RFC restrictions were included because the ALJ's reasoning is discernible from the decision itself.

Accordingly, the undersigned **FINDS** that the ALJ's decision, read as a whole, permits meaningful review of the RFC determination and that substantial evidence supports the ALJ's conclusion that Claimant's non-severe mental impairments did not require additional mental restrictions in the RFC.

## VIII.  **Proposal and Recommendations**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 10); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 11); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED: May 28, 2026**

Joseph K. Reeder
United States Magistrate Judge

18